UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60724-CIV-ALTONAGA

**ALLSTATE FIRE & CASUALTY
INSURANCE CO.**,

    Plaintiff,
vs.

**DUONG THANH HO**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Jose Cifuentes's ("Cifuentes[']s") Motion for Summary Judgment ("Def.'s Motion") [ECF No. 58], filed on December 9, 2011; and Plaintiff, Allstate Fire & Casualty Insurance Company's ("Allstate[']s") Amended Motion for Summary Judgment ("Pl.'s Motion") [ECF No. 77], filed on January 5, 2012. The Court has carefully considered the parties' written submissions, applicable law, and oral arguments presented on January 31, 2012.

### I. BACKGROUND

This case involves an insurance policy dispute arising out of a car accident that occurred on January 20, 2010. (*See* Def.'s Statement of Material Facts . . . ("DSMF") ¶ 2 [ECF No. 57]). The vehicle involved was owned by Duong Thanh Ho ("Duong"), was insured by Allstate, and was being driven by Duong's son, Jonathan Dang Ho ("Jonathan"), when it collided with Cifuentes as he was crossing Commercial Boulevard. (*See id.* ¶¶ 1, 3). Prior to the accident, Duong gave Jonathan permission to drive the insured's vehicle. (*See* Pl.'s Amended Statement of Material Facts . . . ("PSMF") ¶ 3 [ECF No. 79]).

Although Duong was not with Jonathan when the accident occurred, he arrived at the scene of the accident soon thereafter. (*See id.* ¶ 4). At the scene, Duong saw the insured vehicle on the road, rendered aid to Cifuentes, and witnessed the police and ambulance arrive. (*See id.*). Duong also spoke with Jonathan and the police officers regarding Jonathan's liability for the accident, at which time Jonathan indicated that he did not "remember" whether he hit Cifuentes. (*Id.* ¶ 4 (quoting Deposition of Duong Ho 32:5 ("Duong Depo.") [ECF No. 68-3])). The initial Florida Traffic Crash Report states that Jonathan was a "witness" to the accident, and that he "did not hear the crash or see the vehicle that struck" Cifuentes. (DSMF ¶ 4 (quoting Florida Traffic Crash Report 3 [ECF 57-1])). As a result of the accident, Cifuentes sustained serious injuries, including fractured ribs, a fractured leg, and head trauma. (*See id.*). Both Duong and Jonathan were aware that Cifuentes was transported to the hospital as a result of the injuries he sustained in the accident. (*See* PSMF ¶¶ 2, 4).

On January 27, 2010, the Broward Sheriff's Office ("BSO") received a Crime Stoppers Tip from an anonymous caller indicating that Jonathan had collided with Cifuentes. (*See* DSMF ¶ 5). On March 15, 2010, the BSO contacted Jonathan regarding the anonymous tip. (*See id.* ¶ 6). That same day, Jonathan went to the BSO and admitted to striking Cifuentes while driving on a suspended license. (*See id.*). The police informed Jonathan of the extensive nature of Cifuentes's injuries. (*See* PSMF ¶ 6). Jonathan received three citations and was incarcerated. (*See id.*).

Allstate never received any notification of the accident until April 7, 2010 — 77 days after the accident, and weeks after Jonathan had confessed to the police — in a letter sent by Cifuentes's original counsel, Mark Anidjar ("Anidjar"). (*See id.* ¶ 7). The letter only provided Allstate with the name of the claimant, the date of the loss, and the name of the policy holder; it

did not contain a copy of the police report, mention where the accident occurred, make any reference to Jonathan, or contain any other details concerning Cifuentes's claim or injuries. (*See id.*).

A week later, on April 14, 2010, Allstate contacted Duong to discuss the situation involving the insured vehicle. (*See id.* ¶ 15). According to Cifuentes, during that conversation, Duong advised Allstate that he did not have knowledge of the accident, nor did he have any knowledge of his son's involvement (*see* DSMF ¶ 13); according to Allstate, Duong stated he did not recall any accident, would discuss the matter with his wife, and call Allstate back the next day but did not (*see* PSMF ¶ 15). On April 30, 2010, Duong and Allstate spoke for a second time, at which point Duong reported that there was no damage to his vehicle. (*See* DSMF ¶ 15). On May 24, 2010, Allstate spoke with Jonathan for the first time. (*See* PSMF ¶ 37). During the phone call Jonathan indicated that he was unsure as to whether he hit Cifuentes. (*See id.*).

On May 27, 2010, Cifuentes retained a new attorney, Jason Weisser ("Weisser"), who filed a personal injury action in state court seeking damages from Jonathan for negligence. (*See id.* ¶¶ 49, 50; Cifuentes's State Court Complaint for Negligence 1 [ECF No. 1-3]). The next day, on May 28, 2010, Allstate spoke with Jonathan for a second time, and Jonathan informed Allstate that Cifuentes had spent one month in the hospital as a result of the accident. (*See* DSMF ¶ 20). That same day, Allstate tendered the policy limits of fifty thousand dollars to Anidjar by sending a check via Federal Express, which was received on June 1, 2010. (*See* PSMF ¶ 48). On June 2, 2010, Weisser sent Allstate a letter notifying Allstate that he had taken over representation of Cifuentes, and moreover, that Cifuentes was rejecting Allstate's offer of

the policy limits due to Allstate's "negligent and unreasonable handling" of the matter. (Weisser Letter Rejecting Policy Limits [ECF No. 68-19]).

The foregoing summary relies on undisputed material facts. However, both parties submit statements of controverted facts that appear to widely dispute the facts which one party or the other considers "material," or to cast the facts in a different light. For example, Allstate maintains that neither Jonathan nor Duong notified Allstate of the accident (*see* PSMF ¶ 8), but Cifuentes asserts Duong spoke to Allstate on April 14 and 30, 2010, and Jonathan spoke to Allstate on May 24 and 28, 2010 (*see* Def.'s Statement of Controverted Facts . . . ("DSCF") ¶ 8 [ECF No. 86]). While Allstate maintains it made numerous attempts to contact its insureds and Anidjar in an effort to investigate Cifuentes's claim (*see* PSMF ¶ 10), Cifuentes states Duong did not receive and attorney Anidjar does not recall receiving such messages and calls (*see* DSCF ¶¶ 10, 12, 16, 20, 21, 22, 24, 25, 28, 32, 33, 34). Allstate states on May 24, 2011, Jonathan spoke to an Allstate representative for the first time (*see* PSMF ¶ 37); but according to Cifuentes, that was the first time an Allstate representative bothered to contact Jonathan, notwithstanding that Allstate was clearly aware of his involvement since May 7, 2010 (*see* DSCF ¶ 37). And while Allstate states Jonathan did not disclose all he knew about the accident during the May 24 call (*see* PSMF ¶ 37), according to Cifuentes, Allstate does not describe what questions were asked in that conversation before accusing Jonathan of non-disclosure (*see* DSCF ¶ 37).

According to Allstate, prior to May 24, 2010, it did not know of Cifuentes's injuries, nor did it have sufficient information to obtain a police report or hospital records. (*See* PSMF ¶ 45). Cifuentes disputes this assertion because by April 7, 2010 Allstate had more than sufficient information to obtain a police report; by making the two phone calls it later placed — one to the BSO and the other to Broward General Hospital — Allstate could have learned that a witness

4

Case 0:11-cv-60724-CMA Document 93 Entered on FLSD Docket 02/10/2012 Page 5 of 17

Case No. 11-60724-CIV-ALTONAGA/Simonton

saw Jonathan strike Cifuentes, Cifuentes was hospitalized for one month, and his hospital bill was $409,304. (*See* DSCF ¶ 45). Allstate asserts only after Jonathan confirmed on May 28, 2010 that he thought the accident had been investigated by the Tamarac Police Department did Allstate have sufficient information to contact the BSO (*see* PSMF ¶ 46); but Cifuentes again disputes this, given that one only needs a name or accident date to obtain a police report, and this information was supplied in the Anidjar letter (*see* DSCF ¶ 46).

Allstate asserts its tender of the policy limits was rejected because the state suit had already been filed (*see* PSMF ¶ 52), but Cifuentes maintains the tender was rejected based on Allstate's "negligent and unreasonable handling of" the claim (*see* DSCF ¶ 52). Finally, Allstate disputes the many "undisputed" factual details advanced by Cifuentes concerning: Allstate's defective and shoddy investigation; the inexperience and inaction of Allstate's first assigned claims adjuster who was unfamiliar with Broward County; Allstate's ability to conduct an investigation shortly after the accident occurred; the ability of Allstate's Broward claims adjuster to know to tender the policy limits without speaking to Duong, Jonathan or Anidjar; Allstate's ability to obtain all of the information it required; and that Allstate has suffered no actual prejudice. (*Compare* DSMF *with* Pl.'s Statement of Controverted Facts . . . ("PSCF") [ECF No. 69]; PSMF *with* DSCF).

Furthermore, Allstate asserts the Hos failed in their obligations to cooperate. On March 15, 2010, Jonathan informed the BSO that his vehicle did strike Cifuentes. (*See* PSMF ¶ 5). However, on May 24, 2010, when Jonathan spoke to an Allstate representative for the first time, he indicated he was unsure if he was involved in the January 20 accident and said he did not know if he had hit Cifuentes. (*See id.* ¶ 37). Also, at his first contact, Duong told Allstate he did not remember any accident. (*See id.* ¶ 35). While Cifuentes disputes some of these assertions

(*see* DSCF ¶¶ 37, 35), he also emphasizes the cooperation that was provided, such as the Hos submitting to examinations under oath. (*See* DSMF ¶¶ 13, 14).

On April 5, 2011, Allstate filed the present action against Defendants Duong Thanh Ho, Jonathan Dang Ho, and Cifuentes, seeking a declaratory judgment pursuant to 28 U.S.C. section 2201, of the rights, duties, and liabilities of the parties involved under Duong's insurance policy with Allstate. (*See* Complaint for Declaratory Judgment and Demand for Jury Trial 1 ("Complaint") [ECF No. 1]). In the Complaint, Allstate alleges that the policy does not provide coverage for Duong and Jonathan because their actions subsequent to the accident violated the notice and cooperation provisions of the policy. (*See id.* ¶¶ 34, 35).

The notice provision of the policy reads:

> If coverage is provided to any person under this policy and that person has an accident involving a motor vehicle, **we** or an authorized agent of **ours** must be informed as soon as possible of all details. As soon as possible, any person making a claim must give **us** written proof of loss, including all details **we** may need to determine the amounts payable, if any.

(Allstate Insurance Policy 18 ("Insurance Policy") [ECF No. 1-2] (emphasis in original)). Allstate alleges that Jonathan and Duong violated this notice provision because they "failed to notify Allstate of the accident as required by the policy, and there is a legal presumption that Allstate was prejudiced by their failure to provide notice as soon as possible." (Compl. ¶ 34).

The cooperation provision of the policy states:

> **We** will require any person making a claim to cooperate with **us** in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, disclosing all facts, attending hearings and trials, and giving **us** a recorded statement, a written statement, and/or a video-recorded statement, when requested by **us**, as often as **we** reasonably require.

(Insurance Policy 26 (emphasis in original)). According to Allstate, Jonathan and Duong violated the cooperation provision because they "failed to inform Allstate of all details

concerning the accident as required by the policy and Allstate was prejudiced by their failure to so inform it," and moreover, they "failed to cooperate with Allstate in the investigation, settlement or defense of the claim and the lawsuit brought by Defendant Cifuentes as required by the policy and Allstate was prejudiced by their failure to so cooperate." (Compl. ¶¶ 35, 36).

Under the policy, Allstate agrees to "defend an **insured person** if sued as the result of a covered **auto** accident. **We** will defend that person at **our** own expense, with counsel of **our** choice and, may settle any claim or suit if **we** feel this is appropriate." (Insurance Policy 23 (emphasis in original)). Furthermore, Allstate agrees to pay for "court costs for defense." (*Id.*).

The Cross-Motions raise the following questions: (1) whether Defendants complied with the insurance policy's notice provision, and if not, whether their failure to comply was prejudicial to Allstate; and (2) whether Defendants complied with the insurance policy's cooperation provision, and if not, whether their failure to comply was prejudicial. The Court addresses the foregoing issues in turn.

## II. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks

omitted). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Furthermore, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron and Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). Lastly, even on cross-motions for summary judgment in a case to be tried to the court, it is not appropriate to assess credibility. *See Equity Investments Partners, LP v. Lenz*, 594 F.3d 1338, 1345 (11th Cir. 2010).

## III. DISCUSSION

### A. The Notice Provision

The first issue the Cross-Motions for Summary Judgment raise is whether Duong and Jonathan violated the notice provision of the insurance policy.

"Under Florida law, a failure to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy." *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-CV-326-ORL-DAB, 2009 WL 1513400, at *6 (M.D. Fla. May 27, 2009) (footnote call number omitted). "Notice is necessary when there has been an occurrence that should lead a reasonably prudent man to believe that a claim for damages would arise." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). Where notice is necessary, it is "to be given within a reasonable time in view of all the facts and circumstances of each particular case." *Bray & Gillespie*, 2009 WL 1513400, at *7 (quoting *Renuart-Bailey-Cheely Lumber & Supply Co. v. Phoenix of Hartford Ins. Co.*, 474 F.2d 555, 557 (5th Cir. 1972) (citation omitted)). The determinations of whether notice was necessary, and if so, whether it

was afforded within a reasonable time under the surrounding circumstances are questions of fact. *See Ideal Mut. Ins. Co.*, 400 So. 2d at 785; *Renuart-Bailey-Cheely Lumber & Supply Co*, 474 F. 2d at 557 (quoting *Hendry v. Grange Mut. Cas. Co.*, 372 F. 2d 222, 225–26 (5th Cir. 1967)) ("All of the Florida cases bearing upon the question of the requirement of notice being given to the insurer seem to be uniform in the proposition that what is a reasonable time depends upon the surrounding circumstances and is ordinarily a question of fact for the jury.").

The notice provision in Duong's insurance policy with Allstate requires the insured to inform Allstate of "all details" regarding a motor vehicle accident "[a]s soon as possible." (Insurance Policy 18). The operative terms, insofar as notice is concerned, are "[a]s soon as possible." The question that Allstate's delayed notification claim raises and the parties address in their extensive briefing is whether this requirement was met.

Each party argues that no issues of material fact remain as to whether Defendants complied with the notice provision of the insurance policy, and that as a matter of law, the Court should rule in its favor. Certainly it is undisputed that there was a motor vehicle accident involving the insured vehicle and Cifuentes on January 20, 2010. It is also undisputed that Allstate first received notification of the accident on April 7, 2010 — 77 days after the accident occurred. What the parties dispute, however, is whether and when Duong and Jonathan possessed a duty to notify Allstate because of Jonathan's uncertainty as to whether he hit Cifuentes while driving Duong's car, and whether the Hos' furnishing of information to Allstate once Allstate communicated with them satisfies the notice provision.

Defendants highlight the following facts in support of their position that Duong and Jonathan did not possess a duty of notification. First, it was Jonathan who was driving the insured vehicle at the time of the accident, and Duong did not actually witness the accident

9

occur. Second, at the time of the accident Jonathan was unsure as to whether he was even responsible for Cifuentes's injury. Third, although Jonathan ultimately confessed to the police that he hit Cifuentes, to this day he is still unsure as to whether he actually struck him. Thus, "[b]ecause the insureds were not even aware that an accident occurred implicating liability under their policy, no duty to notify Allstate of the same ever arose." (Def.'s Memorandum of Law . . . ("Def.'s Mem.") 12–13 [ECF No. 59]).

Allstate, in contrast, emphasizes that both Duong and Jonathan knew there was at least a possibility that Duong's car was involved in an accident. Specifically, both Duong and Jonathan were at the accident scene, and each saw the insured vehicle on the road. Duong rendered aid to Cifuentes and witnessed the police and ambulance arrive. Jonathan was aware Cifuentes was transported to the hospital as a result of the injuries he sustained in the accident. Duong also specifically asked Jonathan whether he hit Cifuentes, and Jonathan responded that he could not remember.

Under Duong's insurance policy with Allstate, the duty to notify arises at the moment in which the insured knows that "an accident" involving the insured vehicle has occurred. (Insurance Policy 18). Viewing all evidence and making all reasonable inferences in favor of the Defendants on Allstate's Motion, the Court simply cannot conclude, as Allstate argues, that the Hos were aware on January 20, 2010 that the insured vehicle was involved in an accident. (*See* Pl.'s Mot. 5). Defendant's position is that knowledge of the accident was not possible until Jonathan confessed to the BSO on March 15, 2010; at summary judgment, the Court must take Defendant at his word. *See Equity Investments Partners, LP*, 594 F.3d at 1345. Because a reasonable fact finder could conclude that until Jonathan admitted or acknowledged his culpability to the BSO, the Hos were unaware that "an accident" had occurred — and because of

competing inferences and credibility issues — the Court must withhold summary judgment on the question of whether the duty to notify arose on January 20, 2010.

The next question, then, is whether notice was provided within a reasonable time in view of all the facts and circumstances of the case. *See Bray & Gillespie*, 2009 WL 1513400, at *7; *Palma Vista Condo. Assoc. of Hillsborough Cnty., Inc. v. Nationwide Mut. Fire Ins. Co., Inc.*, No. 8:09-CV-155-T-27EAJ, 2010 WL 4274747, at * 3 (M.D. Fla. Oct. 7, 2010) (quoting *Laster v. U.S. Fidelity & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974) ("'Prompt notice' means notice 'given with reasonable dispatch and within reasonable time in view of all the facts and circumstances of the particular case.'"). Again, whether the notice was reasonable is a question of fact for the jury. *Palma Vista Condo. Assoc.*, 2010 WL 4274747, at *3. In one case whether a *four-year* delay was reasonable was found to be a question for the jury. *See Renuart-Bailey-Cheely Lumber & Supply Co.*, 474 F.2d at 557–58.

Allstate was first informed of the accident not by Duong or Jonathan, but by counsel for Cifuentes, on April 7, 2010 — 77 days after the accident transpired — and several weeks after Jonathan confessed to the police. In fact, the first time Duong or Jonathan provided Allstate with any information regarding the accident was on April 30, 2010 — 100 days after the accident. (*See* DSCF ¶ 8). While Allstate argues that this delay is unreasonable, Defendants offer justifications for their delay. Assuming the Court finds Jonathan credible, Jonathan's uncertainty concerning his culpability and late disclosure to the BSO, and perhaps to his father, might be reasons to "start the clock" at a later date. Therefore, given the nature of the disputed factual record, a determination of whether notice was provided within a reasonable time cannot be made by way of summary judgment.

The final issue regarding Allstate's delayed notice claim is prejudice. As the parties acknowledge in their memoranda, a violation of the notification provision is not alone sufficient to afford Allstate the declaratory relief it seeks — that is, to be relieved of its obligations under the policy. Even if the notification provision was violated, in order to be entitled to a judgment in its favor Allstate must also have suffered prejudice.

Under Florida law, an insured's breach of a notice provision creates a rebuttable presumption of prejudice. *See Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985) ("If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice."); *Ro-Ro Enterp., Inc. v. State Farm Fire & Cas. Co.*, No. 93-1754-CIV, 1994 WL 16782171, at *3 (S.D. Fla. June 22, 1994) (noting that "the law is well settled [in Florida] that an insured bears the burden of overcoming the presumption of prejudice"). Thus, although "a presumption of prejudice follows a finding of unreasonable notice, that presumption may be overcome by competent evidence" demonstrating otherwise. *Gonzalez v. U.S. Fid. & Guar. Co.*, 441 So. 2d 681, 681 (Fla. 3d DCA 1983). The insured's burden is to show by competent evidence that the insurer has not been substantially prejudiced by the lack of notice or the untimely notice. *See Florida Mun. Liab. Self Insurers Program v. Mead Reinsur. Corp.*, 796 F. Supp. 509, 513 (S.D. Fla. 1992).

Possible grounds for prejudice include an "inability to conduct a timely investigation, to apportion settlement amounts, to determine date of occurrences, to set reserves and to adjust subsequent premium rates" — each of which "requires a fact-intensive inquiry." *Harris Specialty Chem., Inc. v. U.S. Fire Ins. Co.*, No. 3:98-CV-351-J-20B, 2000 WL 34533982, at *10 (M.D. Fla. July 7, 2000); *see also Niesz v. Albright*, 217 So. 2d 606, 608 (Fla. 4th DCA 1969)

(finding that a nine-month delay in notice "did not prejudice the insurer because an investigation conducted immediately following the accident would not have disclosed anything materially different from that disclosed by the delayed investigation . . .").

Each party argues that no issues of material fact remain as to whether Allstate was prejudiced by the delay, and that as a matter of law, therefore, the Court should rule in its favor. Allstate paints the following picture: It took its adjuster from April 7 to May 28, a mere seven weeks, to investigate and tender the policy limits, which were rejected according to Cifuentes's counsel because the tender was made too late. Had Allstate been provided timely notification and taken the same amount of time to decide to tender the limits, the offer might have been accepted; indeed, Weisser's rejection of the tender of the policy limits communicates Cifuentes's displeasure with Allstate's "negligent and unreasonable handling" of the matter, which presumably includes the time period between the date of the accident and Cifuentes's counsel's first communication with Allstate. Allstate asks that the Court infer from this chronology that the delay in notice caused the delay in the tender and the ultimate rejection of the tender, thereby establishing prejudice. (*See* Pl.'s Mot. 9).

In contrast, Cifuentes states that Allstate does not affirmatively present any evidence that an earlier offer of the policy limits would have been accepted and a negligence lawsuit avoided. (Curiously, he does not supply his own affidavit attesting to this.). He emphasizes that it was not until days after the accident that the Crime Stoppers tip came in and weeks later that Jonathan remembered that he had, in fact, struck Cifuentes, confessing to it. According to Cifuentes, an earlier investigation by Allstate would not have yielded that information, which is what prompted Allstate to tender the policy limits weeks later. Furthermore, he notes that Allstate's own claims adjuster admitted she would not have done anything differently had she received the

13

claim earlier. (*See* Def.'s Memorandum in Opposition . . . ("Mem. in Opp'n") 9 [ECF No. 87]). Lastly, Cifuentes asserts that Allstate's defense of the state suit and attorney's fees incurred in this action do not constitute prejudice; the state suit is not concluded, and Allstate's limit of $50,000 in coverage has not changed.

"The mere interference with the insurer's right to 'associate' in the defense of the claim is too amorphous and cannot itself constitute prejudice unless the insurer can demonstrate that earlier notice would have probably led to a more advantageous result." *Westchester Fire Ins. Co. v. Treesdale, Inc.*, No. 2:05cv1523, 2008 WL 1943471, at *16 (W.D. Pa. May 2, 2008) (citation and brackets omitted). An insurer suffers prejudice when it is denied the "opportunity to eliminate or reduce its loss," *Ideal Mut. Ins. Co.*, 400 So. 2d at 786; or "better investigate and assess its rights and liabilities," *Laster*, 293 So. 2d at 87. *See also Hartford Acc. &. Indem. Co. v. Phelps*, 294 So. 2d 362, 365 (Fla. 1st DCA 1974) ("Prejudice is more readily apparent in a case involving tort law where [the] inability of the insurer to promptly discover and interview potential witnesses or keep track of a party's injuries or losses might more clearly prejudice [the] defense of [a] later action.").

The evidence is unclear whether earlier notice to Allstate would have led to a more advantageous result; indeed, the parties do not clearly address whether acceptance of the policy limits by Cifuentes also would have eliminated Allstate's incurring of attorney's fees and costs in the present defense of the state suit, and the Court will not speculate on this point. Cifuentes's arguments that the $50,000 limit has not increased and that costs of the defense do not constitute prejudice to Allstate are not supported by citations to authority or adequate explanation, as it appears from the policy that Allstate's obligation to pay the costs of its insureds' defense is separate from and in addition to its obligation to pay up to the policy limits. *See, e.g., In re Tech.*

*Equities Corp.*, 163 B.R. 350, 361 (Bankr. N.D. Cal. 1993) ("In a self-consuming policy, . . . the insureds choose to use the limits of the policy in defending themselves against claims, [and] the policy limits are reduced."). Consequently, summary judgment cannot be entered in favor of Cifuentes on the basis that Allstate has suffered no prejudice from any late notice; conversely, Cifuentes has presented sufficient evidence to rebut the presumption of prejudice, resulting in a denial of Allstate's request for summary judgment.

### B. Breach of the Cooperation Clause

The second issue the Cross-Motions for Summary Judgment raise is whether the Defendants violated the cooperation provision of the insurance policy.

Under Florida Law, "an insurer may deny coverage and avoid payment of compensation to the victim of the insured's tort where the insured has been guilty of lack of cooperation which is material and is of such a nature as would substantially prejudice the rights of the insurer." *Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976). In the context a cooperation clause claim — unlike a delayed notification claim — it is the *insurer* who has the burden of showing substantial prejudice. *See id.* ("[T]o constitute the breach of a policy, the insurance company must show that it was substantially prejudiced in the particular case by failure to cooperate."). "The question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but . . . where the facts are admitted, it may well be a question of law." *Id.* To be relieved of liability, however, the insurer must also be able to demonstrate "that it has exercised diligence and good faith in bringing about the cooperation of its insured and . . . that it has complied in good faith with the terms of the policy." *Id.* at 75; *see also Cont'l Cas. Co. v. City of Jacksonville*, 550 F. Supp. 2d 1312, 1339 (M.D. Fla. 2007) ("In order to satisfy its burden of diligently and reasonably attempting to secure

the insured's cooperation, the insurer must in good faith employ methods that are reasonably calculated to locate the insured and secure its cooperation.").

There are four elements to a cooperation clause claim: (1) the insured failed to cooperate as required by the insurance policy; (2) the failure to cooperate was material to the determination of the claim; (3) the failure to cooperate caused the insurer substantial prejudice; and (4) the insurer exercised due diligence and good faith in bringing about the insured's compliance with the cooperation clause. *See Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.*, 860 F. Supp. 1514, 1518 (M.D. Fla. 1993). Each party argues that no issues of material fact remain as to each of these four elements underlying Allstate's cooperation clause claim, and that as a matter of law, the Court should rule in its favor. (*See* Pl.'s Mot. 9–16; Def.'s Mem. 13–17).

The cooperation provision in Duong's insurance policy with Allstate requires "any person making a claim to cooperate . . . in the investigation, settlement or defense of any claim or suit . . . [which] includes, but is not limited to, disclosing all facts." (Insurance Policy 26). The operative phrase, insofar as the cooperation provision is concerned, is the obligation to "disclos[e] all facts." The question that Allstate's cooperation claim raises is whether this requirement was met.

On April 14, 2010, Allstate contacted Duong to discuss the situation regarding the Cifuentes accident. (*See* DSMF ¶ 8). At that point, Duong already knew a number of material facts central to the investigation, including Jonathan's professed uncertainty as to his culpability, and that Cifuentes had been hospitalized due to an accident. (*See* PSMF ¶¶ 4, 5). And yet, as Defendants candidly acknowledge, "Duong advised Allstate that he did not have knowledge of the accident, nor did he have any knowledge of his son's involvement." (DSMF ¶ 13). Thereafter, however, Duong complied with the policy's requirements that he submit to an

examination under oath and furnish the necessary information. On this mixed showing, and on the disputed facts concerning whether Duong heard or received all of Allstate's messages and his belief that his communications were at all times truthful, summary judgment is inappropriate.

Furthermore, other elements of Allstate's cooperation clause claim — substantial prejudice and good faith — cannot be resolved at this time due to the disputed factual issues. The parties widely disagree about the events which unfolded after Allstate first received notice from Cifuentes's counsel, raising questions as to whether Allstate diligently conducted its investigation,[1] and as to whether Allstate was prejudiced by Defendants' violation of the cooperation clause.[2]

### IV. CONCLUSION

Based upon the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment **[ECF No. 77]** is **DENIED**.

2. Defendant's Motion for Summary Judgment **[ECF No. 58]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of February, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[1] Again, the parties widely dispute how Plaintiff's investigation proceeded, and whether those steps were appropriate, diligent, and in good faith. (*See, e.g.*, DSCF ¶¶ 10 (disputing PSMF ¶¶ 10, 12, 16, 20, 21, 22, 24, 25, 28, 32, 33, 34), 38, 39, 45, 46).

[2] The same disputed issues of material fact discussed *supra* regarding prejudice in the context of delayed notification — whether Allstate was deprived of the opportunity to investigate the claim earlier, evaluate the claim earlier, tender the policy limits earlier, and settle the claim before suit was filed, avoiding expenditure of funds in defense of a suit that might not have been filed — are also relevant to determining whether the violation of the cooperation clause was prejudicial. (*See, e.g.*, DCMF ¶¶ 52, 53).